UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

BROOKYLN DOWNTOWN HOTEL LLC, HLAM   :
216 DUFFIELD LLC, CJC REALTY & HOLDINGS  :
INC., JLAM 216 DUFFIELD LLC, HANAN 216  :
DUFFIELD LLC, H&C LUK 216 DUFFIELD LLC,  :
YJL 216 DUFFIELD LLC, S&J TANG 216  :
DUFFIELD LLC, AHSAT HOLDINGS CORP.,  :
HLAM 222 DUFFIELD LLC, A&J LEE 222  :
DUFFIELD LLC, JLAM 222 DUFFIELD LLC,  :
HANAN 222 DUFFIELD LLC, H&C LUK 222  :
DUFFIELD LLC, YJL 222 DUFFIELD LLC, S&J  :
TANG 222 DUFFIELD LLC,  VCL FOREVER  :
REALTY CORP., AINAHS HOLDINGS CORP.,  :
JLAM DUFFIELD III LLC, LAM GENERATION  :
DUFFIELD LLC, H & C DUFFIELD III LLC,  :
HENAN DUFFIELD III LLC, HLAM DUFFIELD III  :
LLC, A&J LEE DUFFIELD III LLC, VAN DAM  :
HOSPITALITY LLC, SOLITA SOHO HOTEL LLC,  :
NY 29 WEST LLC, SOHO 54 LLC, KCL REALTY  :
LLC, S&J TANG 66 CHARLTON LLC, YJL 66  :
CHARLTON LLC, HANAN 66 CHARLTON LLC,  :
H&C LUK 66 CHARLTON LLC, HLAM 66  :
CHARLTON LLC, A&J LEE 66 CHARLTON LLC,  :
VCL FOREVER HOLDINGS INC., ANN STREET  :
HOTEL LLC, LAM PEARL STREET HOTEL LLC,  :
LAM PLATT STREET HOTEL LLC, AND  :
SEAPORT HEIGHTS LLC,  :
 :

               Plaintiffs,  :
 :
   -against-  :
 :
 :
 :
NEW YORK HOTEL AND MOTEL TRADES  :
COUNCIL, AFL-CIO,  :
 :
             Defendant.  :
 :

------------------------------------------------------------------X

CASE NO. _14-cv-6067_

**COMPLAINT**

Plaintiffs Brooklyn Downtown Hotel LLC, HLAM 216 Duffield LLC, CJC Realty & Holdings Inc., JLAM 216 Duffield LLC, HANAN 216 Duffield LLC, H&C LUK 216 Duffield LLC, YJL 216 Duffield LLC, S&J TANG 216 Duffield LLC, AHSAT Holdings Corp., HLAM 222 Duffield LLC, A&J Lee 222 Duffield LLC, JLAM 222 Duffield LLC, HANAN 222 Duffield LLC, H&C LUK 222 Duffield LLC, YJL 222 Duffield LLC, S&J Tang 222 Duffield LLC,  VCL Forever Realty Corp., AINAHS Holdings Corp., JLAM Duffield III LLC, Lam Generation Duffield LLC, H & C Duffield III LLC, HENAN Duffield III LLC, HLAM Duffield III LLC, and A&J LEE Duffield III LLC, Van Dam Hospitality LLC, Solita Soho Hotel LLC, NY 29 West LLC, SOHO 54 LLC, KCL Realty LLC, S&J Tang 66 Charlton LLC, YJL 66 Charlton LLC, HANAN 66 Charlton LLC, H&C Luk 66 Charlton LLC, HLAM 66 Charlton LLC, A&J Lee 66 Charlton LLC, VCL Forever Holdings Inc., Ann Street Hotel LLC, Lam Pearl Street Hotel LLC, Lam Platt Street Hotel LLC, and Seaport Heights LLC ("Plaintiffs"), by and through their counsel, bring this action against Defendant New York Hotel and Motel Trades Council, AFL-CIO ("Defendant") and allege as follows:

## Nature of the Action

1.      Plaintiffs, separately and independently, own twelve hotels in New York City that employ a non-union workforce and that have never agreed to be bound by the Industry Wide Agreement ("IWA"), a multi-employer collective-bargaining contract between Defendant and the Hotel Association of New York City.  Rather than attempt to become the bargaining representative of the workers at Plaintiffs' hotels through the National Labor Relations Act-prescribed means, Defendant asserts that Plaintiffs are bound by a union-friendly card-check organizing process described in the IWA because a separate limited-liability company with some common ownership as Plaintiffs arguably has become bound to the IWA.

2.      Under Defendants' "viral" theory of contract formation, once a legal entity that owns or operates a hotel in New York City becomes subject to the IWA, all other hotels owned or operated by that entity or its corporate affiliates also become subject to the IWA's card-check organizing procedures.  And so would any managing agents of those other hotels.  These managing agents would be bound as "joint employers" or under agency theory, and would then be required to apply the IWA's card-check organizing procedures at other non-union hotels.  The net result of Defendant's scheme would be to force all non-union hotels out of the New York City market.

3.      Defendant's legal theory is contrary to basic principles of contract formation, and to the text of and public policies animating America's labor laws.  This action seeks declaratory relief confirming that Plaintiffs are not bound by the IWA or any of its provisions.

### Jurisdiction and Venue

4.      This action seeks a declaration that a federal collective-bargaining contract does not bind the Plaintiffs, where the Defendant has attempted to assert alleged rights under the contract against Plaintiffs. Jurisdiction of the Court is therefore conferred by 28 U.S.C. § 1331, 29 U.S.C. § 185(a), and 28 U.S.C. § 2201.

5.      Jurisdiction in this district exists over Defendant because its duly authorized officers or agents are engaged in representing or acting for employee members in this district. *See* 29 U.S.C. § 185(c)(2).

6.      Jurisdiction in this district exists over Defendant because a substantial part of the events or omissions giving rise to this action occurred in this district.

7.      Venue is appropriate under 28 U.S.C. § 1391(b)(1), as Defendant is an entity with the capacity to sue and be sued in its common name under applicable law and is subject to jurisdiction in this district.

8.      Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in this district.

9.      Venue is appropriate under 29 U.S.C. § 185(a) because this action seeks a declaratory judgment relative to a suit for violation of a labor contract, which may be brought in any district court that has jurisdiction over the parties.

## Parties

10.     Brooklyn Downtown Hotel LLC, HLAM 216 Duffield LLC, CJC Realty & Holdings Inc., JLAM 216 Duffield LLC, HANAN 216 Duffield LLC, H&C LUK 216 Duffield LLC, YJL 216 Duffield LLC, and S&J TANG 216 Duffield LLC are limited-liability companies organized under the laws of New York with their principal place of business at 216 Duffield Street, Brooklyn, New York.  AHSAT Holdings Corp. is a corporation organized under the laws of New York with its principal place of business at 216 Duffield Street, Brooklyn, New York. They are the owners as tenants in common of the Aloft New York Brooklyn hotel.

11.     HLAM 222 Duffield LLC, A&J Lee 222 Duffield LLC, JLAM 222 Duffield LLC, HANAN 222 Duffield LLC, H&C LUK 222 Duffield LLC, YJL 222 Duffield LLC, and S&J Tang 222 Duffield LLC are limited-liability companies organized under the laws of New York with their principal place of business at 222-228 Duffield Street, Brooklyn, New York. VCL Forever Realty Corp. and AINAHS Holdings Corp. are corporations organized under the laws of New York with their principal place of business at 222-228 Duffield Street, Brooklyn, New York.  They are the owners as tenants in common of the Sheraton Brooklyn New York.

- 4 –

12.     JLAM Duffield III LLC, Lam Generation Duffield LLC, H & C Duffield III LLC, HENAN Duffield III LLC, HLAM Duffield III LLC, and A&J LEE Duffield III LLC are limited-liability companies organized under the laws of New York with their principal place of business at 229 Duffield Street, Brooklyn, New York.  They are the owners as tenants in common of the Hotel Indigo Brooklyn.

13.     Van Dam Hospitality LLC is a limited-liability company organized under the laws of New York with its principal place of business at 52-53 Van Dam Street, Long Island City, New York.  It is the owner of the Fairfield Inn Long Island City.

14.     Solita Soho Hotel LLC is a limited-liability company organized under the laws of New York with its principal place of business at 159 Grand St, New York, New York.  It is the owner of the Solita Soho Hotel.

15.     NY 29 West LLC is a limited-liability company organized under the laws of New York with its principal place of business at 21 West 37th Street, New York, New York.  It is the owner of the Fairfield Inn & Suites New York Manhattan/Fifth Avenue.

16.     KCL Realty LLC, S&J Tang 66 Charlton LLC, YJL 66 Charlton LLC, HANAN 66 Charlton LLC, H&C Luk 66 Charlton LLC, HLAM 66 Charlton LLC, A&J Lee 66 Charlton LLC, are limited-liability companies organized under the laws of New York with their principal place of business at 66 Charlton Street, New York, New York.  VCL Forever Holdings Inc. is a corporation organized under the laws of New York with its principal place of business at 66 Charlton Street, New York, New York.  They are the owners as tenants in common of the Four Points by Sheraton New York Downtown.

17.     SOHO 54 LLC is a limited-liability company organized under the laws of New York with its principal place of business at 54 Watts Street, New York, New York.  It is the owner of the Hampton Inn Soho.

18.     Ann Street Hotel LLC is a limited-liability company organized under the laws of New York with its principal place of business at 49-53 Ann Street, New York, New York.  It is the owner of the Aloft Manhattan Downtown Financial District, which is expected to open in the near future.

19.     Lam Pearl Street Hotel LLC is a limited-liability company organized under the laws of New York with its principal place of business at 213-215 Pearl Street, New York, New York.  It is the owner of the Residence Inn/Courtyard by Marriott, which is expected to open in the near future.

20.     Lam Platt Street Hotel LLC is a limited-liability company organized under the laws of New York with its principal place of business at 6 Platt Street, New York, New York.  It is the owner of the Four Points by Sheraton New York Downtown, which is expected to open in the near future.

21.     Seaport Heights LLC is a limited-liability company organized under the laws of New York with its principal place of business at 30 Fletcher Street, New York, New York.  It is the owner of the Fairfield Inn & Suites by Marriott New York Downtown Financial District, which is expected to open in the near future.

22.     Plaintiffs and Chelsea are separately constituted legal entities, with each being appropriately capitalized, each maintaining corporate records, and each observing corporate formalities in its documentation and conduct.  Each Plaintiff is its own legal entity for tax and

accounting purposes and no assets are intermingled between Plaintiffs or other legal entities with common ultimate owners.

23.     Plaintiffs are comprised of a combination of members of the Lam family or trusts whose beneficiaries are members of Lam family heirs and others.  The ownership of each Plaintiff is different with some members not being members of the other and with different levels or participation and control of the business of such Plaintiff.

24.     Defendant New York Hotel and Motel Trades Council, AFL-CIO is a union within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5) and Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 125(a).  Defendant represents hotel workers in the New York City metropolitan area and in upstate New York around Albany.  Defendant represents approximately 32,000 hotel employees and has contracts with more than 300 hotels, including hotels in all five boroughs of New York City.  That amounts to contracts with about 75 percent of hotels in New York City.

## Facts

### A.     The IWA System

25.     This case concerns the reach of the so-called Industry Wide Agreement ("IWA"), a collective-bargaining contract between Defendant and the Hotel Association of New York City ("HANYC").

26.     HANYC is an association of hotels in New York City.  HANYC has two classes of membership: a general class and a collective-bargaining class.  Members of the collective-bargaining class are a multi-employer bargaining unit.  HANYC bargains on their behalf with Defendant, and these members are parties to the agreements reached by HANYC and Defendant. The resulting agreement is the IWA.  Hotels that are not collective-bargaining members of

HANYC may also assent to the terms the IWA by signing "me too" agreements.  Such "me too" agreements incorporate most of the terms in the IWA and at times contain modifications unique to a property's operations.  Neither Chelsea Grand LLC, nor any of the Plaintiffs, are members of HANYC or a party to a "me too" agreements.

27.     The IWA contains a card-check-and-neutrality clause ("Card Check/Neutrality Clause"), which obligates signatory hotel owners or operators to provide Defendant access to employees, to permit Defendant to organize employees through a card-check process, and to remain neutral throughout the organizing process.

28.     The Card Check/Neutrality Clause is of great value to Defendants.  The AFL-CIO and other labor organizations have vigorously but unsuccessfully sought federal legislation that would allow organization by card check in all cases.  The combination of a card-check and neutrality clause dramatically tilts the balance of power between labor unions and employers towards the union and virtually assures unionization at every business that is subject to these agreements.

29.     The IWA also includes an arbitration clause, which provides that the Office of Impartial Chairman (sometimes, "IC") will resolve disputes arising out of the IWA and preside over a "card count" to determine whether Defendant has obtained valid cards from a majority of full-time and regular part-time employees of a hotel to be designated as a bargaining representative for a hotel's employees.

30.     HANYC and Defendant customarily renegotiate and renew the IWA every five or six years.  One such renewal occurred in July 2001, when a Memorandum of Understanding ("MOU") between HANYC and Defendant took effect.  The MOU added an "accretion" clause to the IWA ("Accretion Clause"), which provided that a hotel that is a party to the IWA will be

required to apply the IWA's Card Check/Neutrality Clause to any new property it acquires or assumes management over, and if Defendant receives a sufficient number of signed cards pursuant to that procedure, the new property will be required to apply the IWA under the legal doctrine of accretion.  The MOU provided that, where accretion (which is a legal doctrine with a basis distinct from contract law) is unavailable, the IWA's Card Check/Neutrality clause shall still apply.  A copy of the 2001 IWA is attached as Exhibit 1.

31.     The 2001 IWA expired in or about 2006.  The IWA was renewed by the HANYC and Defendant with certain revisions in July 2006 (the "2006 IWA").  A copy of the 2006 IWA is attached as Exhibit 2.

32.     The 2006 IWA expired in or about 2012.  The IWA was renewed by the HANYC and Defendant with certain revisions in 2012 (the "2012 IWA").  A copy of the 2012 IWA is attached as Exhibit 3.

33.     Plaintiffs are not members of HANYC and have not entered a "me too" agreement or otherwise bargained with or reached an agreement with Defendant.

**B.     Defendant Sought To Force Chelsea Grand LLC Into the IWA Without Its Consent**

34.     Chelsea owns a hotel located at 160 West 25th Street in the Chelsea section of Manhattan.  That hotel is branded as a "Four Points" hotel ("Four Points Chelsea").  Chelsea Grand, LLC ("Chelsea") is ultimately owned by: (i) Kin Chung Lam (a.k.a. John Lam); (ii) Yuk Jin Lam (a.k.a. Shirley Lam); (iii) Suey Jin Tang; (iv) Keith Lam; (v) Hung Luk; (vi) Shuet Chun Lam (a.k.a. Helen Lam); and (vii) Joann Lee.

35.     In February 2003, Chelsea entered into a management agreement with Interstate Hotels & Resorts ("Interstate") to perform limited management functions at the Four Points Chelsea Hotel.  Interstate is a third-party management company that has no affiliation with

Chelsea, or its members, other than a hotel-management agreement. There is no common ownership between Chelsea and Interstate. Interstate performed similar management functions at other hotels in New York City. In its hotel-management agreement with Chelsea, Interstate agreed to assist Chelsea in operating the hotel. The hotel management agreement expressly states that Chelsea desires to maintain the hotel as a non-union workplace. Interstate had no management agreements with any of the Plaintiffs at any time.

36.      On January 15, 2004, Defendant entered a four-paragraph Memorandum of Agreement ("MOA") with Interstate. The MOA provided that, "retroactive to July 1, 2001," Interstate would be bound to the Accretion and Card Count/Neutrality provisions of the MOU "such that [Defendant] shall be able to apply the Accretion and Card Count/Neutrality provisions to any hotel or concessionaire in the New York City area which came or comes to be owned, operated or managed by Interstate…." Interstate, through the MOA, also agreed to be bound by any successor collective bargaining agreement to the 2001 IWA. The 2001 IWA expired on June 30, 2006. The successor thereto was not executed until July 2007 with a retroactive application to July 2006. Chelsea hired Interstate in 2007. Therefore, the notion that Chelsea was somehow bound to the 2006 IWA through joint-employer or agency theories collapses on itself.

37.      Chelsea was not aware of Interstate's MOA with Defendant, and Interstate never informed Chelsea of any obligations to the Defendant as it relates to the Four Points Chelsea at any time. Further, Chelsea did not authorize Interstate, either by the hotel management agreement or through any conduct between the parties, to bind the Four Points Chelsea to any collective-bargaining contract. Chelsea therefore had no reason to believe it was under any obligation to Defendant. Chelsea never signed any other agreement with the Union.

38.     In early 2007, Defendant informed Chelsea that it intended to enforce the terms of Interstate's agreement.  When Chelsea denied that it was subject to the MOA or the IWA, Defendant purported to submit its dispute with Chelsea to the Office of Impartial Chairman. Chelsea denied that the IC had any jurisdiction over Chelsea.

39.     The IC convened several arbitration hearings, some conducted ex parte on an emergency basis.  The IC issued multiple arbitral awards, finding in relevant part that Chelsea was bound by the MOA and the 2001 and 2006 IWA, in particular, that Chelsea was bound to the Card/Count Neutrality clause, based solely on Interstate's management of the Four Points Chelsea.  IC found that Interstate bound Chelsea to the MOA under doctrines of actual or apparent authority based on the supposed custom in the industry of a hotel manager's having authority to negotiate such an agreement (despite a lack of evidence that such a custom existed) and under the joint-employer doctrine.

40.     Chelsea filed suit in New York Supreme Court to challenge the arbitration award, and the case was removed to the U.S. District Court for the Southern District of New York.  A bench trial was held in July 2008.

41.     Over six years later, on September 29, 2014, the court affirmed the arbitral awards. It found that (1) Interstate was bound to portions of the 2001 IWA pursuant to the MOU; (2) Chelsea was bound to portions of the 2001 IWA as a joint employer with Interstate, and (3) Interstate had apparent authority to bind Chelsea portions of the 2001 IWA.  The district court did not hold that Chelsea was bound to the 2006 or 2012 IWA.

42.     The parts of the 2001 IWA to which the court found that Chelsea was bound allowed for the Office of the Impartial Chairman to arbitrate disputes with Defendant and forced the Card Check/Neutrality Clause on Chelsea against its will.

43.     Chelsea intends to appeal that decision.

**C.     Defendant Seeks To Bind Plaintiffs to the IWA Without Their Consent**

44.     The district-court decision regarding Chelsea said nothing about the applicability of any IWA agreement to any of the Plaintiffs and the Plaintiffs have not participated in any way in the litigation regarding Chelsea.

45.     Following the decision confirming the arbitral award, Defendant sent letters to the General Manager at each of the Plaintiffs' hotels notifying them of Defendant's intent to organize the employees at Plaintiffs' hotels.

46.     The Defendant's letters state that Plaintiffs are bound by the IWA's Card Check/Neutrality Clause.  Pursuant to that Clause, the letters purport to require Plaintiffs to furnish to the Defendant a complete list of all employees, showing their job classifications and departments, work schedules, wages, benefits, home addresses, and telephone numbers within three (3) days of the letter.  The letters also purport to require each Plaintiff to allow Defendants access to its property to engage in organization efforts.  Finally, the letters purport to require each Plaintiff to forfeit its First Amendment rights by remaining neutral on the issue of unionization.

47.     Due to the Chelsea-related proceedings and the Defendant's established organizing practices, Plaintiffs reasonably believe that Defendant will take the position that Plaintiffs are bound by other provisions of the IWA agreements as well, including the arbitration provisions.  It is through the enforcement of the arbitration provision that Defendant is able to utilize the IC—a created forum unique to IWA—to employ is overreaching and unlawful practice of enforcing the Card Check/Neutrality obligations on unwitting victims. Each of the three "chairmen" serving as arbitrators in the IC's office have indefinite terms.  The procedural rules of

the IC are dictated by HANYC and Defendant based on purported custom and practice between those parties without any regard to due-process considerations that typically control arbitral proceedings.  For instance, upon Defendant's request the IC will convene a so called emergency hearing on an immediate basis without allowing the opposing party sufficient time to gather facts to intelligently defend the alleged claim.

48.     If Defendant proceeds to attempt to organize Plaintiffs' hotels based on the Card Check/Neutrality Clause provisions of the IWA agreements, together with Defendant utilizing the habitually one-sided IC to enforce its purported rights under the IWA by seeking punitive damages against the Plaintiffs (as it has done so against Chelsea), Plaintiffs will be irreparably harmed through disruptions of their operations, including suffering unwarranted picketing and strikes, abrogation of Plaintiffs' right of free speech under the First Amendment, abrogation of Plaintiffs' right to due process,  and Plaintiffs will bear the costs attendant to advancing their view of union representation, consistent with the requirements of the National Labor Relations Act.

**D.     Defendants' "Viral" Theory of Offer and Acceptance**

49.     Defendant advances this scheme by relying on an erroneous application of the joint-employer doctrine, and through the unfaithful actions of a purported agent that lacked actual authority to bind Chelsea in this matter (which hotel management agreement expressly states Chelsea's desire to operate non-union hotel), to hold that Chelsea is bound to IWA's Card Check and Neutrality Clauses without its consent.  Defendant seeks to exploit such theories of law, even when it has knowledge that Chelsea has no desire to become union workplace; the Defendant was familiar with a principal member of Chelsea (i.e. John Lam) through its dealing with him in the garment industry.  Instead, the Defendant is using backdoor dealings with

Interstate and this scheme as subterfuge to avoid election process under the NLRB and to shortcut any employer's rights under the NLRA and the Constitution. This is not a case of buyer's remorse where Chelsea has negotiated for labor peace and it is now changing its mind.

50.     Defendant advances this position despite that Chelsea a separate and distinct entity, was bound by the IWA's Card Check and Neutrality Clauses, and that this has occurred not as a matter of voluntary assent but as a joint employer and through the unfaithful actions of an agent that lacked actual authority to bind Chelsea, but was found to have done so nonetheless.

51.     Under Defendants' theory, once a hotel operated by a third party manager is subject to the IWA agreements, the owner of the hotel would be also become bound to the IWA as "joint employers" or under agency theory, and any other hotels owned by that owner or any affiliate of the owner, however, tenuous the affiliation may be, would also become bound to the IWA. Following Defendant's viral theory of offer acceptance, then the managing agents would then be bound to the IWA agreements' Card Check/Neutrality Clause at all other hotels they manage, and then the owners of such hotels would also be bound to the IWA, and so on forever. There is no logical end to this theory and this would circumvent any and all employer's rights under the NLRA and the Constitution without any due process or consent.

52.     There is no logical end to Defendant's viral theory of offer acceptance. Plaintiffs or their agents entered into separate contracts with a management company to operate its hotels. Under the Defendants' legal theory, this management company would be bound to the IWA agreements' Card Check/Neutrality Clause at all the hotels in New York City that it manages without any voluntary indication of assent. Then, either that management company of the hotels it manages or the owners of those hotels would be brought into the IWA, and so on forever.

53.     The net result of Defendant's legal position for the New York City hotel market is that all non-union hotels eventually would be forced out of the City.

**E.      The IWA's Card Check/Neutrality Clause is Not Enforceable**

54.     Under the National Labor Relations Act ("NLRA"), employers and unions are generally prohibited from negotiating an agreement prior to the achievement of majority status. Such agreements are commonly known as "pre-recognition agreements" and are barred except in certain circumstances that are wholly inapplicable to Plaintiffs or Defendant.

55.     Under the NLRA there are two types of provisions in a collective bargaining agreement:  Mandatory and Permissive.  Permissive subjects do not survive a contract's expiration whereas mandatory subjects remain in-tact until a new agreement is reached.

56.     The IWA agreements, including the card-check and neutrality provisions, were negotiated (between Defendant and hotel manager that has no relationship with Plaintiffs' properties) before Defendant has been recognized as the bargaining agent for the workers at the Plaintiffs' properties. In fact, some of Plaintiff's properties do not have line employees that would be purportedly covered job class under the IWA. The IWA's Card Check/Neutrality Clause is a permissive subject of bargaining.

57.     Defendant's attempt to bind Plaintiffs to the IWA agreements in full or to solely the IWA's Card Check/Neutrality Clause is therefore unenforceable as violative of the NLRA and public policy.

**F.      Plaintiffs Are Not Bound By the IWA**

58.     Plaintiffs are not bound by the IWA agreements or any of their provisions.

59.     Defendant has never made an offer to Plaintiffs to accept the IWA agreements or any of their provisions.

60.     Plaintiffs have never accepted an offer by Defendants to accept the IWA agreements or any of their provisions.

61.     The common labor practice is that, because the card check-process and employer neutrality are so valuable to labor unions, employers that accept these provisions receive substantial reciprocal concessions from the labor unions, either in the form of long-term caps on increases in wages and benefits or other substantial concessions that provide immediate and valuable benefits to the employer.  Plaintiffs, however, received no consideration to indicate acceptance of the IWA agreements or any of their provisions.

### G.     Even Assuming Chelsea Grand, LLC Is Bound to the IWA Agreements, IT Cannot Bind Plaintiffs to the IWA Agreements or Any of Their Provisions

62.     Under Defendant's position, Chelsea became subject to the 2001 IWA or some of its provisions as a result of its contractual relationship with Interstate.  Plaintiffs, however, have no relationship with Interstate for any purpose, management or otherwise.

63.     Chelsea lacks authority to bind Plaintiffs to the IWA agreements or any of their provisions.  Plaintiffs have not entered into any contractual agreements with Chelsea establishing an agency relationship, and have never otherwise authorized Chelsea to act on their behalf for any purpose.  Moreover, Chelsea never entered into any agreement with the Defendants with regard to the Plaintiffs.

64.     Plaintiffs have entered into no contractual agreements with Chelsea establishing an agency relationship and have never otherwise authorized Chelsea to act on their behalf for any purpose.

65.     Plaintiffs are not aware of Chelsea ever holding itself out as Plaintiffs' agent for any purposes.

66.     Chelsea is not the alter ego of Plaintiffs.

67. Chelsea is a separate legal entity from Plaintiffs.

68. Chelsea has separate management from the Plaintiffs.

69. Chelsea has a separate business purpose from Plaintiffs.

70. Chelsea is separate from Plaintiffs for accounting purposes and maintains its own assets and liabilities.

71. Chelsea is not bound to the 2006 IWA or any portion thereof. Chelsea is therefore incapable of binding any other entity to the 2006 IWA or any portion thereof.

72. Chelsea is not bound to the 2012 IWA or any portion thereof. Chelsea was therefore incapable of binding any other entity to the 2012 IWA or any portion thereof.

## Claim I—Declaratory Judgment That Plaintiffs Are Not Bound by the 2001 IWA or Any of Its Provisions

73. Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 72 above as if fully set forth herein.

74. This count is an action for declaratory relief pursuant to 22 U.S.C. § 2201 providing that the Plaintiffs are not bound by the 2001 IWA or any of its provisions, including without limitation the Card Check/Neutrality Clause.

75. The controversy between Plaintiffs and Defendant is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

76. The dispute is real and substantial, as Defendants have communicated to Plaintiffs their intent to organize Plaintiffs' hotels based on its interpretation of the IWA agreements. That interpretation would require Plaintiffs to provide Defendant unfettered access to its premises, to forego its First Amendment right to express its opinions about the pros and cons of unionization, and to disclose private information about its employees including but not limited to their home addresses and telephone numbers. Further, the IWA's wages and benefits are significantly more

expensive than benefits offered by Plaintiffs and would place significant burdens on Plaintiffs through its restrictions on job duties for each job class.

77.     The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the dispute between the parties regarding the applicability of the 2001 IWA has been—and continues to be—a source of actual controversy between the parties.

78.     As a result of the foregoing, an actual and justiciable controversy exists between Plaintiffs and Defendant regarding their respective legal rights, and the matter is ripe for review.

### Claim II—Declaratory Judgment that Plaintiffs are Not Bound by the 2006 or 2012 IWA or Any of its Provisions

79.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 72 above as if fully set forth herein.

80.     This count is an action for declaratory relief pursuant to 22 U.S.C. § 2201 providing that the Plaintiffs are not bound by the 2006 or 2012 IWA agreements or any of their provisions, including without limitation the Card Check/Neutrality Clauses.

81.     The controversy between Plaintiffs and Defendant is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

82.     The dispute is real and substantial, as Defendants have communicated to Plaintiffs their intent to organize Plaintiffs' hotels based on its interpretation of the IWA agreements.  That interpretation would require Plaintiffs to provide Defendant unfettered access to its premises, to forego its First Amendment right to express its opinions about the pros and cons of unionization, and to disclose private information about its employees including but not limited to their home addresses and telephone numbers.  Further, the 2006 and 2012 IWA agreements' wages and

benefits are significantly more expensive than benefits offered by Plaintiffs and would place

significant burdens on Plaintiffs through its restrictions on job duties for each job class.

83. The declaratory relief sought is not based on a hypothetical state of facts, nor

would it amount to a mere advisory opinion, as the dispute between the parties regarding the

applicability of the 2006 and 2012 IWA agreements has been—and continues to be—a source of

actual controversy between the parties.

84. As a result of the foregoing, an actual and justiciable controversy exists between

Plaintiffs and Defendant regarding their respective legal rights, and the matter is ripe for review.

**Claim III—Declaratory Judgment that the IWA Agreements Are Not Enforceable**

85. Plaintiffs repeat and incorporate by reference the allegations contained in

Paragraphs 1 through 72 above as if fully set forth herein.

86. This count is an action for declaratory relief pursuant to 22 U.S.C. § 2201

providing that the IWA agreements are unenforceable as violative of the NLRA and public

policy.

87. The controversy between Plaintiffs and Defendant is a definite and concrete

dispute concerning the legal relations of parties with adverse legal interests.

88. The dispute is real and substantial, as Defendants have communicated to Plaintiffs

their intent to organize Plaintiffs' hotels based on its interpretation of the IWA agreements. That

interpretation would require Plaintiffs to provide Defendant unfettered access to its premises, to

forego its First Amendment right to express its opinions about the pros and cons of unionization,

and to disclose private information about its employees including but not limited to their home

addresses and telephone numbers. Further, the 2006 and 2012 IWA agreements' wages and

benefits are significantly more expensive than benefits offered by Plaintiffs and would place

significant burdens on Plaintiffs through its restrictions on job duties for each job class.

89.    The declaratory relief sought is not based on a hypothetical state of facts, nor

would it amount to a mere advisory opinion, as the dispute between the parties regarding the

enforceability of the IWA agreements has been—and continues to be—a source of actual

controversy between the parties.

90.    As a result of the foregoing, an actual and justiciable controversy exists between

Plaintiffs and Defendant regarding their respective legal rights, and the matter is ripe for review.

**Prayer for Relief**

WHEREFORE, Plaintiffs demands declaratory relief and judgment against Defendant as

follows:

A.    A declaration that Plaintiffs are not bound by the 2001 IWA or any of its

provisions, including without limitation the Card Check/Neutrality Clause.

B.    A declaration that Plaintiffs are not bound by the 2006 or 2012 IWA agreements

or any of their provisions, including without limitation the Card Check/Neutrality Clause.

C.    A declaration that the IWA agreements are unenforceable as violative of the

NLRA and public policy.

C.    Attorneys' fees and the other costs of this action; and

D.    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
      October 16, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

By:    */s/ Timothy Scott Pfeifer*
      Timothy Scott Pfeifer
      tpfeifer@bakerlaw.com
      E.D.N.Y. Bar No. TP6331
      Paul Rosenberg*
      prosenberg@bakerlaw.com
      45 Rockefeller Plaza
      14th Floor
      New York, NY  10111
      Telephone:   212.589.4200
      Facsimile:   212.589.4201

      Marc A. Antonetti*
      mantonetti@bakerlaw.com
      Mark W. DeLaquil*
      mdelaquil@bakerlaw.com
      Jay P. Krupin*
      jkrupin@bakerlaw.com
      David B. Rivkin, Jr.*
      drivkin@bakerlaw.com
      Washington Square, Suite 1100
      1050 Connecticut Avenue, NW
      Washington, DC  20036-5304
      Telephone:   202.861.1500
      Facsimile:   202.861.1783

      *Attorneys for Plaintiffs Brooklyn Downtown Hotel LLC, et al.*

*Admissions *pro hac vice* forthcoming