UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

BROOKLYN DOWNTOWN HOTEL LLC,   :
et al.,                        :
                               :   Case No.:  14-cv-6067 (ILG) (SMG)
              Plaintiffs,       :
                               :
     vs.                        :
                               :
NEW YORK HOTEL AND MOTEL TRADES   :
COUNCIL, AFL-CIO AND INTERSTATE   :
HOTELS & RESORTS, INC.,          :
                               :
              Defendants.        :
-------------------------------------------------------------X

INTERSTATE HOTELS & RESORTS, INC.'S BRIEF IN SUPPORT OF ITS MOTION
PURSUANT TO 28 U.S.C. SECTION 1404(a), TO TRANSFER VENUE TO THE
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF NEW YORK OR, IN THE ALTERNATIVE, FOR A STAY

STEPTOE & JOHNSON LLP
Cecelia L. Fanelli, Esq.
E.D.N.Y. Bar No. CF1636
1114 Avenue of the Americas
New York, NY 10036
Phone:  212-506-3925
Fax:  212-506-3950
cfanelli@steptoe.com

*Attorneys for Defendant Interstate
Hotels & Resorts, Inc.*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................1

II. PROCEDURAL BACKGROUND ...............................................................2

    A.    SDNY Actions (SDNY Union Action/Related Second Circuit Appeal and SDNY Interstate Action):  The Lam Group's Long History of Forum Shopping. ..................................................................................2

    B.    EDNY Action:  The Lam Group Forum Shops Yet Again......................5

III. STATEMENT OF FACTS ........................................................................6

    A.    A Majority of the Hotels Are Located in New York City and Are Commonly Owned by the Lam Group......................................................6

    B.    The Three Same Contracts, Which the SDNY Has Already Interpreted, Are the Basis of the Complaint in the EDNY Action and the Complaint in the SDNY Interstate Action. ...................................................................7

        1.    The 2001 IWA:  Previously Interpreted by Judge Crotty, Who Rejected Chelsea's Arguments Regarding the IWA Which Plaintiffs Repeat Here. ........................................................7

        2.    The 2004 MOA, Which Restated Interstate's and the Union's Obligations Under the 2001 IWA:  Previously Interpreted by Judge Crotty, Who Rejected Chelsea's Baseless Allegations of Wrongdoing by Interstate Which Plaintiffs Repeat Here. ...........................8

        3.    The HMA between Chelsea and IMC is a Fundamental Underpinning both the SDNY and EDNY Actions and Has Been Construed by the SDNY, Which Rejected Chelsea's Self-Serving Interpretation.............................................................9

    C.    The Same Issues Regarding Interstate's "Authority" and Status as Chelsea's Purported Agent are Present In Both the SDNY and EDNY Actions and the SDNY Has Ruled Upon These Issues, Rejecting Chelsea's Meritless Contentions. .................................................................12

    D.    The Labor Arbitration That Occurred in the SDNY: A Fundamental Element of Both the SDNY and EDNY Actions ...................................13

    E.    The SDNY Union Action:  Where Many of the Issues Raised in the EDNY Complaint and Many Discovery Disputes Were Already Litigated ..........14

1.   The Interstate-Centered Issues Litigated in the SDNY Union Action, Which is Now on Appeal to the Second Circuit ............................14

F.   The Location of Witnesses: Plaintiffs, Defendants, Third Parties.........................14

G.   The Parties' and Nonparties' Relevant Documents Are in the SDNY .................15

## IV. STANDARD OF REVIEW ................................................................................16

## V. ARGUMENT ......................................................................................................17

A.   Transfer to the SDNY is Appropriate Because This Case Could Properly Have Been Brought in that District..........................................................................17

B.   The First-To-File Rule Creates a Presumption That This Matter Should be Heard in the SDNY and Accordingly Plaintiffs' Choice of Forum is not Entitled to Substantial Weight. ..............................................................................18

C.   The Operative Facts Took Place in the SDNY. .....................................................19

D.   The SDNY Is the More Convenient Forum for Parties and Witnesses and Access to Sources of Proof. ...................................................................................20

E.   Trial Efficiency and The Interest of Justice Mandate a Transfer to the SDNY Because Judge Crotty has Already Invested Substantial Time Since 2007 Mastering the Issues and Evidence Upon Which the EDNY Action is Predicated.................................................................................................................20

F.   If a Transfer is Not Granted, a Stay of These Proceedings is Mandated ..............22

## VI. INTERSTATE IS ENTITLED TO COSTS AND ATTORNEYS' FEES INCURRED IN THE MAKING OF THIS MOTION................................................25

## VII. CONCLUSION ...............................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cali v. East Coast Aviation Servs., Ltd.*,
  178 F. Supp. 2d 276 (E.D.N.Y. 2001) .................................................................16, 18, 19, 20

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. United States E.P.A.*,
  630 F.Supp.2d 295 (S.D.N.Y.2009)..............................................................................22, 24, 25

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
  No. 11 Civ. 1608 AJN MHD, 2012 WL 2865485 (S.D.N.Y. July 10, 2012).........................23

*Fagan v. Republic of Austria*,
  No. 08 Civ. 6715 (LTS) (JCF), 2009 WL 1423338 (S.D.N.Y. May 19, 2009)......................22

*Fried v. Lehman Brothers Real Estate Assocs. III, L.P.*,
  2012 WL 252139 (S.D.N.Y. Jan. 25, 2012) ....................................................................22, 24

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992)..................................................................................................16

*Kappel v. Comfort*,
  914 F. Supp. 1056 (S.D.N.Y. 1996)....................................................................................1, 22

*LaSala v. Needham & Co.*,
  399 F.Supp.2d 421 ..............................................................................................................23

*O'Hopp v. Contifinancial Corp.*,
  88 F. Supp. 2d 31 (E.D.N.Y. 2000) ...........................................................................16, 17, 19, 20

*Readick v. Avis Budget Grp.*,
  No. 12 Civ. 3988, 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014)...........................................22

*Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*,
  68 F. Supp. 2d 161 (E.D.N.Y. 1999) ...................................................................................18

*Walker v. Jon Renau Collection, Inc.*,
  423 F. Supp. 2d 115 (S.D.N.Y. 2005)..................................................................................21

*Wyler-Wittenberg v. Metlife Home Loans, Inc.*,
  899 F. Supp. 2d 235 (E.D.N.Y. 2012) ...........................................................................18, 19

Defendant Interstate Hotels & Resorts, Inc. ("Interstate"), by its attorneys, respectfully submits this brief in support of its Motion, Pursuant to 28 U.S.C. Section 1404(a), to Transfer Venue to the United States District Court for the Southern District of New York ("SDNY") or in the alternative, for a Stay of the proceedings.[1]

## I. PRELIMINARY STATEMENT

"This Complaint sounds like the second reel of a movie; the first reel apparently was shown… before the current complaint was filed here". *Kappel v. Comfort*, 914 F. Supp. 1056, 1057 (S.D.N.Y. 1996). Plaintiffs' Complaint, like in *Kappel*, shares virtually identical allegations with prior filed actions. Indeed, it describes a hotel industry dispute that debuted long ago in the SDNY before Judge Crotty. Since 2007, Judge Crotty has overseen a dispute between Plaintiffs' related entity, Chelsea Grand, LLC ("Chelsea"), and the New York Hotel & Motel Trades Council, AFL-CIO (the "Union") over the unionization of a hotel in Manhattan (the "SDNY Union Action"). In the SDNY Union Action, Chelsea conducted a relentless discovery program against nonparty Interstate Hotels & Resorts, Inc. ("Interstate"), whose affiliate formerly managed the disputed hotel. Then, it sued Interstate in 2008 in a case currently before Judge Crotty, that had been stayed awaiting his decision in the SDNY Union Action (the case against Interstate in the SDNY is referred to as the "SDNY Interstate Action").

Judge Crotty issued an Opinion and Order on September 29, 2014 in the SDNY Union Action, rejecting Chelsea's claims in their entirety ("SDNY Opinion and Order"). Now, Plaintiffs[2] seek to circumvent Judge Crotty's ruling as they try to convince yet another District

---

[1] Interstate also joins in any Transfer Motion filed by the New York Hotel & Motel Trades Council, AFL-CIO ("Union") because all claims against all defendants should be heard in the same forum for efficient judicial administration.

[2] Plaintiffs, like Chelsea, are part of a group of companies owned by the Lam family ("Lam Group").

Court of the merit of the same far-fetched contentions, including the notion that Chelsea's hotel management agreement ("HMA") with Interstate's affiliate guaranteed it a nonunion hotel, despite the fact that Interstate and/or its affiliates managed unionized hotels in Manhattan. Plaintiffs also rely upon Chelsea's implausible argument, rejected by Judge Crotty, that it was entirely ignorant of the potential risk that its Hotel might face unionization because it retained a manager that operated other unionized hotels.  Opinion and Order, p. 22.

The Plaintiffs are simply forum shopping.   This vexatious litigation is a transparent attempt to precipitate inconsistent rulings by ambitiously labeling the similar transactions at issue here and in the SDNY as a "scheme" that somehow violates the antitrust laws.  On the contrary, the SDNY correctly identified what this dispute is really about as to Interstate– rank opportunism by the Lam Group to capitalize on the enormous benefits that flowed from the Interstate HMA, while it pretends that it was completely ignorant of the risk of unionization posed by hiring Interstate as its manager.  Opinion and Order, p. 21-22.  The interest of justice, trial efficiency and a host of other factors mandate a transfer to the SDNY or in the alternative, a Stay.

## II.     PROCEDURAL BACKGROUND

### A.     SDNY Actions (SDNY Union Action/Related Second Circuit Appeal and SDNY Interstate Action):   The Lam Group's Long History of Forum Shopping.

This dispute began with the filing of a lawsuit in the SDNY on March 29, 2007.  *Chelsea Grand, LLC v. New York Hotel & Motel Trades Council, AFL-CIO*, SDNY No. 1:07-cv-02614-PAC, ("SDNY Union Complaint").  Although Interstate was not made a party to that Action, Chelsea served voluminous discovery requests on Interstate in 2007 and 2008, including document and deposition subpoenas.  Pursuant to a protective order and an electronic discovery protocol entered by Judge Crotty in the SDNY (the "SDNY Protective Order and E-Discovery Protocol"), Interstate produced more than 100,000 pages of electronic documents located at

- 2 -

Chelsea's Hotel in Manhattan. *See* Fanelli Dec., Ex. 1. Judge Crotty continues to maintain jurisdiction over Interstate, Chelsea and the Union pursuant to the Protective Order and E-Discovery Protocol. *Id.* Several Interstate witnesses were deposed in the SDNY Union Action in a very aggressive discovery campaign waged by Chelsea against Interstate, which Judge Crotty oversaw. Interstate's general counsel and outside labor counsel were deposed in addition to several fact witnesses.

Chelsea and the Union tried the SDNY Union Action before Judge Crotty in July and August 2008. Shortly thereafter, on November 12, 2008, Chelsea sued Interstate in the Eastern District of Virginia ("EDVA") ("Interstate EDVA Action"). *Chelsea Grand, LLC v. Interstate Hotels & Resorts, Inc.,* EDVA, No. 1:08-cv-01180-LO-JFA. Chelsea's allegations in the Interstate EDVA Action mirrored those in the SDNY Union Action. Chelsea's filing of the EDVA Interstate Complaint was an obvious effort to forum shop, avoid the SDNY and foment never ending vexatious litigation. In response, on December 1, 2008, Interstate filed a Motion Pursuant to 28 U.S.C. 1404(a) to Transfer Venue to the United States District Court for the Southern District of New York or in the Alternative for a Stay ("EDVA Motion to Transfer"). *See* Fanelli Dec., Ex. 2, which is the EDVA Motion to Transfer, including Brief and accompanying Affirmations and Declaration of Cecelia L. Fanelli, with Exhibits ("Fanelli EDVA Dec."). After voluminous briefing and an oral argument in the EDVA, the EDVA transferred the case to Judge Crotty. Judge O'Grady, in rejecting all of Chelsea's contentions, held in part as follows:

> Although I have listened and read carefully the arguments about whether this case is the same case or a different case than Judge Crotty's-- Of course, they are different parties and different contractual questions which are raised, but they are intimately related in the action of the parties. They are very closely intertwined. The same factual nucleus that is talked about in the cases exists in my mind.

> ...The cases are closely enough tied that there is no question that some of Judge Crotty's decisions would be subject to an inconsistent ruling if I went forward with this case instead of him continuing on.

Fanelli Dec., Ex. 3. (Interstate EDVA Action, Hearing Tr., at p. 18).

Judge Crotty stayed the SDNY Interstate Action pursuant to an Order dated September 30, 2010, pending the issuance of his decision in the related SDNY Union Action. *See* Fanelli Dec., Ex. 4. On September 29, 2014, Judge Crotty issued an Opinion and Order confirming the Award rendered by the Impartial Chairman ("IC"). (SDNY Opinion and Order). *See* Fanelli Dec., Ex. 5. Judge Crotty made a number of key holdings regarding issues that the Plaintiffs have directly placed before the EDNY in their Amended Complaint with respect to Interstate. For example, Judge Crotty, in interpreting the same contractual agreements that are at issue here, found that (1) Interstate was bound by the Card Count/Neutrality Clause in the 2001 Industry Wide Agreement by virtue of its management of two Manhattan hotels, the Roosevelt and the Park Central, which management predated Interstate's relationship with Chelsea; (2) Interstate bound Chelsea Grand to the 2001 Industry Wide Agreement as a joint employer based upon Chelsea's conduct with regard to the management of the Hotel; and (3) Interstate had the authority to bind Chelsea Grand to the 2001 Industry Wide Agreement as its agent based upon an apparent agency conferred on Interstate by the conduct of Chelsea.

Chelsea appealed Judge Crotty's Opinion and Order to the Second Circuit ("Second Circuit Appeal") in October, 2014. Chelsea designated the EDNY Action as a related case to the SDNY Union Action, confirming to the Second Circuit that the EDNY Action "Involves an issue that is substantially similar or related to an issue in this appeal." *See* Fanelli Dec., Ex. 6. *However, Chelsea failed to designate the SDNY Interstate Action as a related action in the Second Circuit Appeal. Chelsea failed to do so despite the fact that the SDNY Interstate Action*

- 4 -

*shares the "same factual nucleus" with the SDNY Union Action, as expressly held by Judge O'Grady.*

### B.   EDNY Action: The Lam Group Forum Shops Yet Again.

On November 10, 2014, Interstate was served with the Amended Complaint in the EDNY Action ("EDNY Complaint"). The Plaintiffs in the EDNY Action, like Chelsea, are Lam Group related entities. The allegations of the EDNY Action mirror those contained in the SDNY Interstate Action and the SDNY Union Action, now on appeal to the Second Circuit. Essentially, the Amended Complaint in the EDNY Action regurgitates the allegations in the First Amended Complaint in the SDNY Interstate Action ("SDNY Interstate Complaint") with respect to the HMA between Interstate Management Company, L.L.C. ("IMC") and Chelsea. *See, e.g.*, EDNY Complaint, ¶¶ 43-48; SDNY First Amended Complaint, ¶¶ 5-9. Likewise, the SDNY and the EDNY Complaints relate to similar facts and legal theories with respect to the 2001 IWA. *See, e.g.,* SDNY Interstate Complaint, ¶¶ 11.3, 11.4, 14.5; EDNY Complaint, ¶¶ 31-34. Further, both Actions hinge directly on the 2004 Memorandum of Agreement ("MOA") executed by the Union and Interstate. The MOA is the allegedly "Hidden Agreement" between Interstate and the Union which Plaintiffs implausibly allege was designed to help the Union to "expand its control of hotel labor and management services." *See, e.g.*, SDNY Complaint ¶¶ 10-23; EDNY Complaint ¶¶ 47-48. Also, the Complaint here, like the SDNY Interstate Complaint, raises the same issue regarding Interstate's authority and its status as an agent of Chelsea able to bind it to the IWA. *See, e.g.*, SDNY Interstate Complaint, ¶¶ 26.1-26.5; EDNY Complaint, ¶¶ 58-60. Additionally, Plaintiffs and their related entity, Chelsea, assert the same allegations regarding the labor arbitration and the supposed failure of Interstate to raise certain arguments on behalf of Chelsea at that arbitration. *See, e.g.*, SDNY Interstate Complaint, ¶¶ 19-22; EDNY Complaint, ¶¶ 50-51, 60. And, the EDNY Complaint repeats the identical theory of "abject ignorance" that forms the

- 5 -

basis for Chelsea's common law claims in the SDNY Union and Interstate Actions, namely, that Chelsea had "no reason to expect its arrangement with Interstate would in any way affect the provision or purchase of hotel labor or hotel management services". *See, e.g.,* EDNY Complaint, ¶ 46. The SDNY expressly rejected averments similar to those in paragraph 46 of the EDNY Complaint. Opinion and Order, p. 22. In sum, these fundamental issues were already litigated in the related SDNY Union Action, ultimately expressly ruled upon by Judge Crotty and then appealed by Chelsea in the currently pending Second Circuit Appeal.

### III.   STATEMENT OF FACTS

The facts set forth below demonstrate the inextricable connection between this dispute and the SDNY Interstate Action (and the SDNY Union Action on appeal).

**A.   A Majority of the Hotels Are Located in New York City and Are Commonly Owned by the Lam Group.**

This case involves twelve hotels, the majority of which are in the SDNY. Indeed, eight hotels are in the SDNY. EDNY Complaint, ¶¶ 15-22; one is in the Long Island City, *Id.* ¶ 14; and, only the remaining three properties are in Brooklyn. *Id.* ¶¶ 11-13. The Court can take judicial notice of the location of the various properties. The EDNY Complaint establishes that Plaintiffs' "ultimate owners are comprised of a combination of members of the Lam family or trusts whose beneficiaries are members of Lam family heirs and others." *Id.* ¶ 24. Although the EDNY Complaint avers that the ownership of each Plaintiff is "different", that averment is based merely on the inconsequential allegation that "some members are not members of the other and [have] different levels or participation and control of the business of such Plaintiff." *Id.* There is common ownership among Chelsea and the Plaintiffs as the EDNY Complaint shows.

From late 2003 through February 2008, IMC managed Chelsea's Hotel pursuant to the HMA. Thirteen IMC employees worked at the Hotel during the time that IMC managed it. *See*

Fanelli Dec., Ex. 2, EDVA Transfer Motion, Affirmation of Regina Rangel. As the EDNY Complaint states, Interstate is not managing and has not managed any of the twelve hotels at issue in the EDVA Action. EDNY Complaint ¶ 44. IMC is a party to the SDNY Interstate Action but it is not a party to the EDNY Action, despite the fact that it, not Interstate, is the signatory to the HMA upon which Plaintiffs rely here.

**B.      The Three Same Contracts, Which the SDNY Has Already Interpreted, Are the Basis of the Complaint in the EDNY Action and the Complaint in the SDNY Interstate Action.**

As the Complaints at issue establish, the Court deciding this dispute will be required to interpret three contracts -the HMA, the IWA, and the MOA.[3] One, the 2001 IWA, was between the Union and HANYC. The second, the 2004 MOA was between Interstate and the Union and restated Interstate's obligations under the IWA. Fanelli Dec., Ex. 7. The third is the 2003 HMA, between IMC and Chelsea, which controlled the management of Chelsea's Hotel in Manhattan. Fanelli Dec., Ex. 8.

**1.      The 2001 IWA:   Previously Interpreted by Judge Crotty, Who Rejected Chelsea's Arguments Regarding the IWA Which Plaintiffs Repeat Here.**

The 2001 IWA is a labor agreement between HANYC and the Union that governs the labor relations of 23,000 employees and 150 hotels in New York City. *See* SDNY Interstate Complaint, Ex. C.; EDNY Complaint, Ex. 1. The SDNY Interstate Complaint and EDNY Complaint aver that the 2001 IWA obligates its members to substitute a Card Check/Neutrality procedure for secret ballot elections, accretes any hotels that signatories acquire or manage in the future into the IWA, and submits all disputes under the IWA to binding arbitration before the

---

[3] The EDNY Complaint does not attach the HMA or MOA, despite the fact that those contracts form the basis of Plaintiffs' claims.

New York IC. *See, e.g.,* SDNY Interstate Complaint, ¶¶ 11.2-11.4; EDNY Complaint, ¶¶ 31-35.

Through its management of two Manhattan hotels, the Roosevelt and the Park Central, Interstate

was bound by the IWA before IMC entered the HMA with Chelsea in 2003. *See* Fanelli Dec.,

Ex. 2, (which contains the Declaration of Cecelia L. Fanelli to EDVA Motion to Transfer, Ex. A,

which Exhibit to the Declaration shows the Roosevelt and Park Central as "bargaining group

hotels" as of July 28, 2000). Chelsea's theory of liability against Interstate under the HMA relies

on Chelsea somehow being able to show that Interstate was not bound to the IWA prior to

entering into the HMA. *See, e.g.*, SDNY Interstate Complaint, ¶¶ 14.4-14.6. Plaintiffs' EDNY

Complaint makes the same allegation. *See* EDNY Complaint, ¶ 46. Tellingly, Plaintiffs' EDNY

Complaint is silent as to Interstate's pre-existing management of the Roosevelt and Park Central

hotels. *This omission is inexcusable because Judge Crotty has already interpreted the 2001 IWA

in the SDNY Union Action, finding that Interstate was bound by the IWA by virtue of its

management of the Roosevelt and Park Central hotels.* Opinion and Order, p. 12-13. Further, he

rejected Chelsea's argument that the 2004 MOA somehow demonstrates that Interstate was not

previously bound by the Roosevelt and Park Central hotels, representations, *Id.* at p. 12-13, fn. 4.

Of course, Plaintiffs' deal with the inconvenient issue of Interstate's pre-existing management of

the Roosevelt and Park Central hotels by ignoring those facts in the EDNY Complaint.

        **2.**        **The 2004 MOA, Which Restated Interstate's and the Union's Obligations Under the 2001 IWA: Previously Interpreted by Judge Crotty, Who Rejected Chelsea's Baseless Allegations of Wrongdoing by Interstate Which Plaintiffs Repeat Here.**

        The EDNY will also have to interpret the MOA, dated January 15, 2004, between

Interstate and the Union, if it agrees to hear this matter. *See* SDNY Complaint, ¶¶ 10-23; Ex. B;

EDNY Complaint ¶¶ 47-48; 121, 131, 139, 150, 159. The MOA restated Interstate's obligations

under the IWA and clarified the Union's rights with respect to two New York City hotels

managed by Interstate on behalf of owners other than Chelsea (the Park Central and the JFK Courtyard by Marriott). Fanelli Dec., Ex. 6. As noted above, Judge Crotty in the SDNY Union Action addressed the 2004 MOA and concluded that Interstate was already bound to the IWA prior to the execution of the 2004 MOA, contrary to Chelsea's –and now Plaintiffs'– assertions otherwise. Opinion and Order, at fn. 4.

> **3.  The HMA between Chelsea and IMC is a Fundamental Underpinning both the SDNY and EDNY Actions and Has Been Construed by the SDNY, Which Rejected Chelsea's Self-Serving Interpretation.**

The HMA, which is one of the central components of the so-called "scheme" identified in the EDNY Complaint, calls for performance in Manhattan. *See e.g.,* EDNY Complaint ¶ 3. SDNY Complaint, Ex. A., § 21.7, *see, e.g.,* Article III, IV and V. For example, several provisions within Article III detail the "General Services by Operator" and unequivocally show that Interstate's performance is to be accomplished in Manhattan. Section 3.1 lists the Pre-Opening Activities that IMC must perform in order to get the Hotel operational and open for business. *See id.* §§ 3.1a-f. Section 3.2 likewise demonstrates the indisputable Manhattan nexus of the HMA. Significantly, Section 3.2A, which the SDNY and EDNY Complaints conveniently do not focus upon, provides that IMC controls the Hotel's employees. Section 3.2A states that operator "shall":

> Recruit, train, direct, supervise, employ (except as otherwise provided herein) and dismiss on-site staff (the "Hotel Employees") for the operation of the Hotel, and in connection therewith establish and maintain an affirmative action plan for the Hotel[.]

The remainder of Section 3.2 sets forth the various activities that IMC will perform in its operation of Chelsea's Hotel in Manhattan. *See id.* § 3.2.

Further, the provisions of Article IV, which deal with the "General Operation of the Hotel," make IMC the "exclusive operator" of Chelsea's Hotel. Section 4.1 establishes that IMC

- 9 -

will have "control and discretion" in running the Hotel and that that control and discretion involves the "determination" of "employee wage, benefits and severance policies for any employees employed by Operator..." at the Hotel. Section 4.1 also states that "...Operator shall advise, and consult with, Owner on the establishment of employee wage, benefits and severance policies for Hotel Employees of the Hotel who are not employees of Operator." *See id.* § 4.1.

Plaintiffs' claims, like Chelsea's in the SDNY, require judicial interpretation of the HMA, which Judge Crotty did extensively in his Opinion and Order. *See, e.g.,* SDNY Opinion and Order, p. 6-9; 13-14; 19-22. For example, Chelsea and Plaintiffs' claims both hinge on a self-serving interpretation of Section 16.1 of the HMA. Chelsea, in the SDNY Interstate Complaint misleadingly quotes out of context to create the false and implausible impression that Chelsea, was entirely ignorant of Interstate's obligations under the IWA, that there was a contractual "intent"[4] that the Hotel be "nonunion," and that Interstate somehow owed a "fiduciary duty" to keep the Hotel nonunion forever. *See, e.g.*, SDNY Complaint, ¶¶ 5, 6, 7.3. The EDNY Complaint likewise encapsulates Chelsea's far-fetched argument that the HMA gave Chelsea the right to remain union free. *See, e.g.,* EDNY Complaint, ¶¶ 2-5; 43-46; 121, 131, 139, 150, 159.

In fact, quoted in full context, Section 16.1 of the HMA shows that Chelsea "acknowledge[d] and agree[d]" that Interstate was a union manager in New York City and had no obligation to assist Chelsea "in resisting any union campaign or organization efforts":

> Operator hereby *acknowledges* that Owner *desires* to open and operate the Hotel as a non-union hotel. Owner *acknowledges and agrees* that (a) *Operator will not participate or assist Owner in resisting any union*

---

[4] The actual language of the first sentence of Section 16.1 demonstrates no such "intent". Instead, the express terms of the first sentence of Section 16.1 show that it simply memorializes Chelsea's unenforceable, unilateral "desire" to "open and operate" the Hotel as a non-union hotel.

> *campaign or organization efforts by any union and* (b) *Operator and its affiliates manage other unionized hotels in New York City* (including any airport markets servicing the New York City or surrounding areas) and organizational efforts by union(s) with respect to the Hotel employees may affect, disrupt, hinder, or interfere with the normal operations at such other hotels managed by Operator and its affiliates. If at any time during the Operating Term, Operator determines that the operations or labor relations at other hotels managed by Operator and its affiliates are interfered with, interrupted, hindered or affected as a result of labor relations or labor unrest at the Hotel between the Hotel, its employees or any union (or lack of any collective bargaining agreement in effect for the Hotel) ("Labor Issues"), Operator shall have the right, without penalty, to terminate this Agreement by providing to Owner at least one hundred twenty (120) days prior written notice of termination ....

SDNY Interstate Complaint, Ex. A., § 16.1 (emphasis added).[5]

Judge Crotty vigorously rejected Chelsea's implausible interpretation of the HMA as guaranteeing a non-union Hotel to Chelsea, which contractual interpretation Plaintiffs now attempt to foist onto the EDNY under the guise of antitrust claims.  EDNY Complaint, ¶¶ 43-46.  Specifically, Judge Crotty concluded as follows:

> … Chelsea Grand persists that the Union would have been put on notice of Interstate's lack of authority had it requested the HMA, which "acknowledges that Owner desires to open and operate the Hotel as a non-union hotel." Mr. Lam had conveyed to Peter Ward, the head of the Hotel union, that Mr. Lam generally did not want to be unionized. *But that wish does not outweigh or overcome the otherwise broad authority conferred on managing agents in the New York City hotel industry. See id.*
>
> Chelsea Grand made Interstate its managing agent to obtain the Sheraton franchise.  It recognized Interstate as its Managing Agent to

---

[5] The Court should note that the negotiation and drafting of the HMA involved no meaningful connection with the EDNY.  Gary Wisinski ("Wisinski") represented Interstate and its predecessor Interstate Hotels Corporation in the negotiation of the HMA.  At the time, Wisinski was based in Pittsburgh, Pennsylvania.  Affirmation of Gary Wisinski, ¶ 4, filed with the Eastern District of Virginia in connection with the EDVA Motion to Transfer.  During the negotiations, Wisinski met with Chelsea representatives, such as Chelsea directors Hung Luk ("Luk") and John Lam, regarding the HMA.  These meetings took place in Manhattan. *Id.* ¶ 5.  Timothy Hudak, Esq. ("Hudak"), at first Interstate's general counsel and later Interstate's outside corporate counsel, drafted the HMA.  Hudak performed this work in Pittsburgh. *Id.* ¶ 6.

secure a refinancing with Merrill Lynch. ... Further, Mr. Lam and Mr. Luk acknowledged that Chelsea Grand was not operating the hotel; instead, it was managed by Interstate. ***This leads to but one conclusion: Interstate is clearly vested with apparent authority. Holding otherwise would allow Chelsea Grand to select the benefits of its management contract when it chooses to do so, while avoiding the burdens when it is inconvenient to bear them. Having taken on the relationship with an experienced hotel management company with a pre-existing labor and union relationship, Chelsea Grand was bound by it. Furthermore, Mr. Lam must have been aware of this pre-existing relationship, otherwise he would not have expended so much effort in avoiding the consequences of the relationship.***

SDNY Opinion and Order, p. 21-22. (emphasis added). Clearly, the above ruling demonstrates the common nucleus of operative facts and legal standards shared by this case and the matters pending in the SDNY.[6]

C.    **The Same Issues Regarding Interstate's "Authority" and Status as Chelsea's Purported Agent are Present In Both the SDNY and EDNY Actions and the SDNY Has Ruled Upon These Issues, Rejecting Chelsea's Meritless Contentions.**

The SDNY Interstate Action relies upon the notion, *inter alia*, that Interstate is Chelsea's agent and breached a fiduciary duty to Chelsea by virtue of entering into the MOA and failing to raise arguments at the labor arbitration. *See, e.g.*, SDNY Interstate Complaint, ¶¶ 43-52. Judge Crotty expressly ruled upon the agency issue in the SDNY Union Action, finding that Interstate was not Chelsea's agent pursuant to the HMA. SDNY Opinion and Order, at p. 19 ("An express or implied agency relationship did not exist between Interstate and Chelsea Grand because Article XVI of the HMA acknowledged that Chelsea Grand desired a "non-union hotel"). Instead, Judge Crotty found that Interstate had "apparent authority to bind Chelsea Grand because Chelsea Grand itself had represented to third parties that Interstate was its "managing

---

[6] Judge Crotty also ruled extensively on the "joint employer" issue, finding that Chelsea's behavior caused it to be a "joint employer" with Interstate and thus subject to the IWA. Opinion and Order, p. 13-19.

agent" so that Chelsea Grand could obtain refinancing with Merrill Lynch and obtain a Sheraton franchise. *Id.* at p. 19-22.

Plaintiffs revisit the same allegations in the Amended Complaint here, noting the "unfaithful actions of Interstate," in an apparent reference to an alleged fiduciary agency status of Interstate, which Judge Crotty rejected. *See, e.g.*, EDNY Amended Complaint, ¶ 58-60. Absent an agency relationship, no fiduciary duty exits. However, the EDNY Complaint ignores the crucial finding made by Judge Crotty, namely, that Interstate had *apparent authority* to bind Chelsea because of Chelsea's *own* actions in representing to third parties that Interstate was its managing agent. Opinion and Order, at p. 19-22. *This omission is inexcusable and simply an attempt by Plaintiffs to start litigating the issue anew before this Court and to attempt to precipitate an inconsistent ruling.*

### D.   The Labor Arbitration That Occurred in the SDNY: A Fundamental Element of Both the SDNY and EDNY Actions

Chelsea's Complaint in the SDNY Interstate Action and Plaintiffs' Complaint in the EDNY make another SDNY event a centerpiece of the claims against Interstate:  the January 2007 labor arbitration in which the New York IC held that Interstate and Chelsea were both bound by the Card-check/Neutrality provisions of the IWA.  After having refused to attend the arbitration, Chelsea sought to relitigate that arbitration in the SDNY Interstate Action – and, according to the EDNY Complaint, will seek to do so again here – by claiming that Interstate's outside labor counsel allegedly failed to make certain legal and factual arguments at the hearing in New York before the IC.  *See, e.g.*, SDNY Amended Complaint, ¶¶ 19-22; EDNY Complaint, ¶¶ 50-51.  For example, Plaintiffs, like Chelsea, contend that "…Interstate did not take a position contrary to the Union's claim that Four Points Chelsea is subject to the IWA's unionization provision," at the arbitration.  EDNY Complaint, ¶ 50.  As these allegations of the EDNY

Complaint demonstrate, there could not be a clearer nexus to the SDNY regarding this controlling event in Plaintiffs' theory of liability. Chelsea made Interstate's counsel's handling of the labor arbitration also a centerpiece of the SDNY Union Action and demanded substantial discovery on that topic, including taking the deposition of Interstate's outside legal counsel. Chelsea's specious arguments regarding this issue were ultimately inconsequential to Judge Crotty's ruling. However, Plaintiffs continue with a recalcitrant strategy that centers on the labor arbitration that Chelsea failed to attend and failed to attempt to stay.

**E.**  **The SDNY Union Action: Where Many of the Issues Raised in the EDNY Complaint and Many Discovery Disputes Were Already Litigated**

**1.**  **The Interstate-Centered Issues Litigated in the SDNY Union Action, Which is Now on Appeal to the Second Circuit**

Chelsea attempted to make Interstate the centerpiece of the SDNY Union Action, although it never joined Interstate as a party in that case. In fact, ¶ 26 of the SDNY Union Complaint lists ***fourteen*** separate inquiries relating to Interstate that Chelsea claims are before the SDNY. A review of ¶¶ 26, 26.1-26.4 demonstrates the broad array of matters relating to Interstate that Chelsea put at issue in the SDNY Union Action. Those issues significantly overlap issues in the EDNY Amended Complaint, encompassing as they do topics such as Interstate's alleged actual, implied and/or apparent authority, Interstate's alleged status as Chelsea's agent, the question of joint employment and the interpretation of the 2001 IWA and the 2004 MOA. As the aforementioned shows, if this Court presides over Plaintiffs' claims, it will be required to retry the evidence and many arguments that Chelsea tried before Judge Crotty in the SDNY Union Action and which are currently pending in the Second Circuit.

**F.**  **The Location of Witnesses: Plaintiffs, Defendants, Third Parties**

Plaintiffs' likely witnesses, Luk and Lam for example, work in Manhattan and the SDNY is a convenient forum for them. Interstate has an office in the SDNY and manages several hotels

there, of which this Court can take judicial notice. Further, the Union is headquartered in the SDNY, as is the HANYC. *See* EDNY Complaint ¶¶ 28. Also, key third party witnesses whose testimony was relied upon by Judge Crotty in his Opinion and Order – Starwood Hotels & Resorts, Inc. ("Starwood") and Merrill Lynch – are located in the SDNY. Finally, the record in the SDNY Union Action reflects that several Interstate witnesses and Interstate's outside labor counsel were already extensively deposed in the related SDNY Union Action regarding matters at issue here. They will be made available there again, if needed.

A discovery program administered from the EDNY will immerse Interstate in endless collateral litigation in not one, but two federal Districts. This precise scenario unfolded previously in the SDNY Union Action, during which Chelsea sought to whipsaw Interstate between conflicting discovery dispositions in the SDNY and the EDVA, with Chelsea "interpreting" the SDNY's rulings for the EDVA in an effort to circumvent unfavorable discovery rulings from the SDNY. A transfer to the SDNY will prevent the proliferation of multi-district discovery litigation that is likely to ensue if this case is adjudicated here.

## G.  The Parties' and Nonparties' Relevant Documents Are in the SDNY

Chelsea's hotel-level documents relating to this controversy are located in the SDNY. Further, Interstate's hotel-level documents were located on the computers of general manager Doorfee and assistant general manager Jeffery Trumpler ("Trumpler"). Fanelli Dec., Ex. 1. Interstate produced voluminous electronic documents from Doorfee and Trumpler's computer to Chelsea and their hard drives were forensically imaged. *Id.* at ¶6. Likewise, the files of nonparties like the Union, HANYC, Starwood and Merrill Lynch are located in the SDNY.

Judge Crotty presided over a protracted and complex discovery program against Interstate, instigated by Chelsea, which remains the subject of the SDNY Protective Order and E-Discovery Protocol, by which Judge Crotty retained jurisdiction over Interstate, Chelsea and the

Union. The SDNY has sole and exclusive jurisdiction over any disputes arising out of or relating to the Protected Material that is the subject of that Order and Protocol. That Protected Material relates to the issues set forth in the EDNY Complaint upon which Judge Crotty has already ruled. It would be grossly inefficient to allow the Plaintiffs to proceed in the EDNY in light of the SDNY's deep knowledge and experience with the relevant documentary evidence.

## IV.    STANDARD OF REVIEW

Section 1404(a) "governs motions to transfer, and provides that 'for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *Cali v. East Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 282 (E.D.N.Y. 2001) (citing 28 U.S.C. § 1404(a)) (citations omitted). Motions for transfer of venue "lie within the broad discretion of the district court." *Id.* (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992). In applying Section 1404(a), a district court must first decide whether the case could have been brought in the transferee forum. *Id*. Next, the court must determine whether transfer is appropriate. In making such a determination, a court will consider the following factors: (1) the weight accorded plaintiffs' choice of forum; (2) the place where the operative facts took place; (3) the convenience of the parties; (4) the convenience of witnesses, and the availability of process to compel unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) a forum's familiarity with the governing law; and (7) trial efficiency and the interest of justice. *Id.* at 292. The movant bears the burden of showing that transfer is proper. *Id.* at 282. Interstate clearly meets this burden.

In addition, where there is a related case pending in another jurisdiction, the "first-filed" rule creates a presumption in favor of transfer to that jurisdiction. *Id.* at 292-93; *O'Hopp v. Contifinancial Corp.*, 88 F. Supp. 2d 31, 34-35 (E.D.N.Y. 2000). "The party asserting that the

- 16 -

first-filed rule should *not* apply has the burden to show that special circumstances exist justifying departure from the rule." *Id.* at 35.  (citations omitted; emphasis added).  No such special circumstances exist here and Plaintiffs have failed to sustain their burden to rebut the first-filed presumption.

## V.    ARGUMENT

This Action is an attempt to evade and/or to collaterally attack the SDNY's Opinion and Order and to avoid consideration of all disputes with all parties in just one courtroom.  This case must be seen for what it is:  an improper attempt to forum shop by the Lam Group, which already failed to forum shop the SDNY Interstate Action to the Eastern District of Virginia.  The Court should exercise its discretion to transfer this case to the SDNY because it could have been brought in the SDNY and the interests of justice require a transfer.  The Plaintiffs cannot reasonably argue that the SDNY is inconvenient, because their related entity, Chelsea, is currently engaged in litigating not one, *but two*, actions there arising out of matters Plaintiffs seek to place before this Court.  Importantly, the SDNY is intimately familiar with key evidence and contentions at issue here, as shown by its recent Opinion and Order.

### A.    Transfer to the SDNY is Appropriate Because This Case Could Properly Have Been Brought in that District

Indisputably, this case meets the threshold showing that it could properly have been brought in the SDNY.  28 U.S.C. § 1391(b).  Interstate has been a defendant since 2008 in the SDNY Interstate Action.  It maintains an office in Manhattan and manages several hotels in the SDNY.  Also, a substantial part of the events giving rise to the antitrust claims asserted by Plaintiffs occurred in the SDNY.  *See* Statement of Facts, §§ A-F.  Accordingly, venue is proper in the SDNY.  28 U.S.C. § 1391(a).

- 17 -

**B.    The First-To-File Rule Creates a Presumption That This Matter Should be Heard in the SDNY and Accordingly Plaintiffs' Choice of Forum is not Entitled to Substantial Weight.**

There is a presumption that this matter should be heard in the SDNY.  When two related lawsuits are pending simultaneously in different federal courts, district courts within the Second Circuit routinely transfer later-filed related cases in the interests of convenience and judicial economy.  *Cali*, 178 F. Supp. 2d at 292-93 (transferring second-filed action where the other court's actions were clearly the first ones filed to arise from the plane crash and transfer served the interest of justice).  It is well established that:

> Proper application of the "first-filed" rule requires that the first and subsequently filed case(s) have either identical or substantially similar parties and claims... Importantly, application of the rule does not require *identical* parties in the cases, but merely requires "substantial overlap".

*Wyler-Wittenberg v. Metlife Home Loans, Inc.,* 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012). (citations omitted; emphasis in original).  The *Wyler-Wittenberg* court further noted that "…in the assessment of whether the "first-filed" rule is applicable, the Second Circuit plainly does not require the first-filed action and the subsequent action to consist of identical parties." *Id.*  With respect to the claims asserted, if the second-filed claims simply "derive from the transactions" in the first-filed action, the claims should proceed in the first forum.  *Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161, 165 (E.D.N.Y. 1999) (dismissing second-filed suit where its antitrust, civil RICO, and other claims were derived from transactions underlying the first-filed copyright infringement suit).

Courts are especially intolerant of a duplicity of actions where a party is forum shopping to avoid prior orders of the original court, like Plaintiffs are doing here.  For example, in *Shmuel Shmueli,* this Court cautioned that:

> Where plaintiffs' objective in bringing the duplicative action is to

- 18 -

> circumvent prior orders of the original court, it should hardly need
> saying that the court where the duplicative action is brought may not
> lend its hand to the advancement of such tactics.

*Id.* at 165-66.

Clearly, this case should proceed in the first-filed forum. As Plaintiffs acknowledge in their Complaint, there is a common identity between them and Chelsea, and complete identity of parties is not required in any event. And, the facts here unequivocally show that the antitrust claims in the EDNY derive from a similar factual nucleus underlying the common law claims currently at issue in the SDNY Interstate Action and SDNY Union Action. Finally, and importantly, Plaintiffs' antitrust claims should proceed in the SDNY because they are simply a brazen attempt to circumvent the SDNY Opinion and Order which directly addresses the factual and legal subject matter of the antitrust claims that Plaintiffs seek to litigate here. In sum, because the first-filed rule clearly favors the SDNY as the forum to litigate Plaintiffs' claims, Plaintiffs' choice of forum is not entitled to substantial weight. *Wyler-Wittenberg v. Metlife Home Loans, Inc.*, 899 F. Supp. 2d 235, 249 (E.D.N.Y. 2012).

## C.     The Operative Facts Took Place in the SDNY.

"[T]he place where the operative facts took place" is a compelling consideration. *Cali*, 178 F. Supp. 2d at 292-293, (transferring case where airplane crash occurred in transferee forum and wreckage was stored there, despite other factors weighing in favor of the transferor forum); *O'Hopp v. Contifinancial Corp.*, 88 F. Supp. 2d 31, 36 (E.D.N.Y. 2000) (transferring case to S.D.N.Y. where most of the pertinent events occurred in S.D.N.Y. and many of the defendants, documents, and witnesses were located there).

Here, there can be no doubt that Plaintiffs' claims arose in the SDNY, where Chelsea's Hotel and the majority of the other Hotels are located, where the HMA was performed and allegedly breached, where the Interstate on-site managers performed their day to day operation of

- 19 -

the Chelsea Hotel, where the IWA was operative, where the MOA was entered into and operative, where the majority of the unionization attempts were made or are being made, where the disputed labor arbitration occurred, where Interstate's outside counsel allegedly failed to raise certain arguments during the arbitration, and where the IC rendered the decision that Chelsea challenged in the related SDNY Union Action that began in the SDNY in 2007 and is still pending on appeal. Finally, the SDNY is also the jurisdiction that recently issued an Opinion and Order relating to facts and legal issues that are and intertwined with the claims here.

### D. The SDNY Is the More Convenient Forum for Parties and Witnesses and Access to Sources of Proof.

Transfer is also warranted because the SDNY is the more convenient forum for the parties and witnesses. *See, e.g.* Statement of Facts, §§ A, E-F. Further, key documents relating to the nexus of Plaintiffs' alleged antitrust claims are located there. *Id.* In addition, none of the attorneys representing the Plaintiffs list an office in the EDNY, while all of these Plaintiffs are represented by attorneys with offices in the SDNY.

### E. Trial Efficiency and The Interest of Justice Mandate a Transfer to the SDNY Because Judge Crotty has Already Invested Substantial Time Since 2007 Mastering the Issues and Evidence Upon Which the EDNY Action is Predicated.

The interest of justice require a transfer of this case to the SDNY. One of the "primary functions of § 1404(a) is to avoid the wasting of judicial resources and unnecessary expenses." *O'Hopp v. Contifinancial Corp.*, 88 F. Supp 2d 31, 36 (E.D.N.Y. 2000) (citations omitted). A "compelling reason" for transfer is that another action "arising out of the same events" is currently proceeding in another forum. *Cali v. East Coast Aviation Serv., Ltd.,* 178 F. Supp. 2d 276, 295 (E.D.N.Y. 2001). "[L]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results." *Id.* (citations omitted).

Indeed, the "interest of justice component of the Section 1404(a) analysis 'may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result'." *Id.*

A transfer will avoid a maelstrom of duplicative parallel litigation. Chelsea subjected Interstate to unrelenting and voluminous discovery in the related SDNY Union Action regarding the transactions at issue here. Then, Chelsea sued Interstate and that case has been pending in the SDNY since 2009. Judge Crotty has been adjudicating the disputes raised by the Lam Group since 2007 and indeed issued a ruling directly addressing the transactions that are the subject of the EDNY Complaint. The SDNY has expended considerable time and resources on this dispute already. It would be a waste of judicial resources to splinter the Lam Group's related disputes into two actions in two different courts simply because Plaintiffs now purport to assert antitrust violations, as well as common law causes of action, against Interstate. Further, because this case is in its early stages, no unfair prejudice will result if it is transferred to the SDNY and Plaintiffs are required to litigate their claims there. Courts in this Circuit have observed that where there has not yet been a significant investment by a court in a case in terms of either time or work, this fact weighs in favor of transfer. *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 119 (S.D.N.Y. 2005) (transferring case where the complaint was filed four months prior).

Finally, it is clear that the SDNY is the situs of the operative facts for all the reasons previously noted. *See* Section C above. Simply because three hotels are located in Brooklyn, this dispute should not be allowed to migrate to the EDNY when it has been ongoing for seven years in the SDNY and Judge Crotty recently issued a comprehensive decision. Such a result would undermine trial efficiency and judicial economy.

**F.     If a Transfer is Not Granted, a Stay of These Proceedings is Mandated**

If this Court decides not to transfer this action, it should stay the proceeding pending the decision of the Second Circuit entered in the SDNY Union Action. "The power to stay a lawsuit is inherent in the Court's prerogative to manage its docket efficiently … In deciding a motion to stay, courts in the Second Circuit balance five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation, as balanced against the prejudice to the plaintiffs if the litigation is delayed, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of persons not party to the civil litigation, and (5) the public interest. *Kappel v. Comfort*, 914 F.Supp. 1056, 1058 (S.D.N.Y. 1996); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. United States E.P.A.*, 630 F.Supp.2d 295, 304 (S.D.N.Y.2009)." *Fried v. Lehman Brothers Real Estate Assocs. III, L.P.*, 2012 WL 252139, at *5 (S.D.N.Y. Jan. 25, 2012). As the court in *Fried* further observed, because there was a "significant overlap between the lawsuit before it and another lawsuit on appeal, both legally and factually, [there is] a solid ground upon which to issue a stay." *Id.*

Because of the significant overlap, both legally and factually, between this case, the SDNY Interstate Action and the contentions asserted against Interstate as a nonparty to the SDNY Union Action/Second Circuit Appeal, a stay here is indisputably "on solid ground." The most cursory review of the relevant facts, the legal issues and the ruling issued by Judge Crotty in the SDNY Union Action indisputably establishes this overlap. *See* Statement of Facts, Sections A-G; SDNY Opinion and Order. *See Readick v. Avis Budget Grp.*, No. 12 Civ. 3988, 2014 WL 1683799, at *4 (S.D.N.Y. Apr. 28, 2014) (granting stay where first-filed case "will likely resolve many of the factual and legal issues" even though claims were not identical); *Fagan v. Republic of Austria*, No. 08 Civ. 6715 (LTS) (JCF), 2009 WL 1423338, at *4 (S.D.N.Y. May 19, 2009).

- 22 -

All five factors mandating a stay are satisfied here. First, the SDNY Union Action is proceeding in the Second Circuit and the plaintiffs will sustain no prejudice by waiting for a ruling rather than embarking on a litigation in the EDNY that arises out of the same transactions and legal issues. The Lam Group has waited for six years for Judge Crotty to make a decision and never at any time sought to lift the stay in the SDNY Interstate Action. Suddenly, after Judge Crotty ruled, it apparently occurred to the Lam Group for the very first time after seven years of litigation, that the Union, Interstate, HANYC and many other yet to be named co-conspirators have engaged in a conspiracy to violate the antitrust laws. The antitrust claims are a transparent vehicle to forum shop and requiring Plaintiffs to await the Second Circuit's ruling a bit longer will cause them no harm. Furthermore, Plaintiffs will not be prejudiced by a stay because this case is in its very early stages. Moreover, a narrowing of issues would save all parties' litigation costs, and the duration of a stay would be relatively short given that all that remains is a decision by the Second Circuit. *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11 Civ. 1608 AJN MHD, 2012 WL 2865485, at *4 (S.D.N.Y. July 10, 2012) (granting stay where the briefing schedule for the first-filed case on appeal to Second Circuit indicated that it would be resolved in a timely manner).

Second, on the other hand, this lawsuit is an enormous burden to Interstate. Interstate expended immense time and resources responding to nonparty discovery in the SDNY Union Action, with respect to issues that arise out of the "same nucleus of facts" that form the predicate for the alleged antitrust conspiracy between it and the Union. *LaSala v. Needham & Co.*, 399 F.Supp.2d 421, 427 (observing the proprietary of staying a lawsuit "in light of a concurrently pending action either because the claim arises from the same nucleus of facts or because the pending action would resolve a controlling question of law"). Proceeding forward with this

litigation will cause Interstate and all parties to suffer the unnecessary litigation cost of duplicative suits. *Fried v. Lehman Brothers Real Estate Assocs. III, L.P.*, 2012 WL 252139 at *5.

Third, the interests of the courts also dictate that a stay be implemented here. Judicial resources will be conserved if this litigation is stayed pending a Second Circuit ruling regarding Judge Crotty's conclusions about the IWA, MOA, HMA, and Interstate's purported "authority" and agency status, all of which are central to the Plaintiffs' antitrust claims in the EDNY.

Fourth, the interests of non-parties also mandate a stay. HANYC is named as a co-conspirator. EDNY Amended Complaint, ¶ 28. Further, "Additional individuals, firms and corporations, not named as Defendants, including the members and agents of Defendants Union and Interstate, may have participated as conspirators.... Plaintiffs reserve the right to name subsequently some or all of those persons as defendants." *Id.* at ¶ 29. Based upon these types of statements about wide-spread future litigation against a multitude of individuals, firms and corporations who are "members and agents" of Interstate, this case should be stayed pending the Second Circuit's ruling relating to Judge Crotty's decision. For years, Judge Crotty had the opportunity to oversee discovery relating to Interstate, to evaluate the documentary proof produced by Interstate and the testimony of its witnesses in reaching his conclusions. If additional Interstate related individuals, firms and corporations are to be sued in the tsunami of litigation that the Plaintiffs' Amended Complaint anticipates, that litigation should be before the SDNY which has had seven years of experience with this continuing dispute.

Finally, the public interest weighs in favor of a stay. As the court in *Catskill Mountains Chapter of Trout Unlimited, Inc.*, 630 F.Supp.2d 295, 306 (S.D.N.Y. 2009) observed, "By conserving judicial resources, a stay will serve not only the interest of the courts, but also the

interests of the Parties, the nonparties, and the public in "an orderly and efficient use of judicial resources."   Absent a stay, the public good will be harmed by duplicative litigation fueling unnecessary litigation with the threat of inconsistent results if both courts proceed simultaneously. *Id.*

## VI.    INTERSTATE IS ENTITLED TO COSTS AND ATTORNEYS' FEES INCURRED IN THE MAKING OF THIS MOTION

Interstate is entitled to recover its attorneys' fees and costs relating to the filing of this Motion.  The Lam Group is a recidivist forum shopper.  This is the ***second*** time that a lawsuit against Interstate has been forum shopped in order to avoid the SDNY.   Under these circumstances, it is particularly appropriate to award Interstate its fees and costs in responding to the maelstrom of duplicative, vexatious litigation that Plaintiffs have provoked.

## VII.    CONCLUSION

Interstate respectfully requests that pursuant to 28 U.S.C. Section 1404(a) this Court transfer this matter to the United States District Court for the Southern District of New York.  In the alternative, if the Court determines not to transfer this matter, Interstate respectfully requests that this Court stay these proceedings until such time as the Second Circuit issues its decision involving the related SDNY Union Action.

Dated:  December 4, 2014                                    Respectfully submitted,

                                                           STEPTOE & JOHNSON LLP

                                                           By: _____
                                                               Cecelia L. Fanelli
                                                               E.D.N.Y. Bar No. CF1636
                                                               1114 Avenue of the Americas
                                                               New York, New York 10036
                                                               Phone:  212-506-3925
                                                               Fax:  212-506-3950
                                                               *Attorneys for Defendant*
                                                               *Interstate Hotels & Resorts, Inc.*